IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CROWN CASTLE FIBER LLC,** *Plaintiff,* | § § § § | |
| vs. | § § | CASE NO. 4:20-CV-03369 |
| **CITY OF PASADENA,** *Defendant.* | § § § § § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR STAY PENDING APPEAL**

Plaintiff Crown Castle Fiber LLC ("Crown Castle") respectfully submits this response in opposition to Defendant City of Pasadena's (the "City" or "Pasadena") motion to stay enforcement of the Court's final judgment and permanent injunction pending appeal. *Dkt. 153*.

### INTRODUCTION

On August 2, 2022, this Court entered a final judgment declaring that certain provisions of the City of Pasadena's Design Manual are preempted by the Telecommunications Act ("TCA") and enjoining the City's continued enforcement of those provisions. *Dkt. 148*. Crown Castle has spent 2 years in litigation—in addition to 3 prior years in dialogue with the City—attempting to secure its rights of

1

access to necessary stretches of the public right-of-way to deploy critical "small cell" telecommunications infrastructure in the City of Pasadena, and the City has sought to block Crown Castle's access at every turn. As this Court rightly held in its recent summary judgment Order, federal preemption in this case is clear. As a result of the Court's injunction, Crown Castle is finally able to submit permit applications for small cell node and pole locations in the City of Pasadena without the threat of the City denying those requests based on these preempted municipal regulations. Moreover, Crown Castle can finally fulfill its contract with T-Mobile for the installation of the small cells and provide the increased telecommunications capacity desperately needed by users in Pasadena.

The City now requests that this Court stay its permanent injunction pending appeal, arguing that such a stay is warranted based on the same strained interpretations of the TCA that it unsuccessfully proffered in its prior briefing. Indeed, the City's arguments to try to demonstrate "likelihood of success" are carbon copies of arguments it previously (and unsuccessfully) submitted on summary judgment, many of which are *directly controverted* by Fifth Circuit and FCC authority and otherwise have no independent support in any Fifth Circuit case law. These arguments were meritless on summary judgment, and they are meritless now. The City cannot show a "strong likelihood of success on the merits" by rehashing

old arguments and proposing that the Fifth Circuit *might* disagree with this Court's reasoned judgment.

The City's primary basis for staying the Court's injunction is its contention that it purports to hold a trump card: that as a municipality, it is per se injured by *any* injunction preventing enforcement of its laws (regardless of the illegality of its laws), and the interests of the public effectively mirror the City's. However, while cities may have general interests in enforcing their laws, a strong, countervailing public interest is at play in this case: as this Court's summary judgment order confirms, the citizens of Pasadena have a protected interest in the expeditious rollout of telecommunications services that have already been significantly delayed. Moreover, a stay will substantially injure Crown Castle by preventing it from fulfilling its contract with T-Mobile, and imposing the tangible economic harm of lost revenues.

The City has not shown *any* likelihood of success on the merits (much less, a "strong" likelihood), and the competing interests at play under these circumstances do not close that massive gap in the City's burden. The City's motion to stay this Court's permanent injunction pending appeal should be denied.

## ARGUMENT

"A stay is an 'intrusion into the ordinary processes of administration and judicial review,' and accordingly 'is not a matter of right, even if irreparable injury

3

might otherwise result to the appellant.'" *Nken v. Holder*, 556 U.S. 418, 427, 129 S.Ct. 1749, 173 L.Ed. 2d 550 (2009). In deciding whether to grant a stay, the Court must consider whether: (1) the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) the applicant will be irreparably injured absent a stay; (3) the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) the stay is in the public interest. *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016).

In reviewing these factors, the "party seeking the stay bears the burden of showing its need." *Tex. League of United Latin Am. Citizens v. Hughs*, 978 F.3d 136, 143 (5th Cir. 2020). The City has not carried this heavy burden.

I. **THE CITY'S APPEAL DOES NOT HAVE A "STRONG LIKELIHOOD OF SUCCESS ON THE MERITS."**

The City fails entirely to argue that it has a strong likelihood of success on appeal. Instead, it presents a laundry list of reasons that the Fifth Circuit *could potentially* disagree with this Court's judgment. To prevail on a motion to stay, it is not enough to show "a mere 'possibility' of relief," *Nken*, 556 U.S. at 434. The likelihood of prevailing on appeal must be "strong." *Id.*

The City cannot carry that heavy burden here. As this Court correctly recognized, the City's onerous Design Manual restrictions are preempted by federal law. The City's Motion for Stay contains no new Fifth Circuit case law or other

4

compelling authorities to support its arguments for success on appeal, all of which are merely rehashed from its summary judgment briefing.

The City's sole bases for its "likelihood of success" on appeal are no more than generalized hopes that the Fifth Circuit *might* disagree with this Court's findings as to three issues: (1) that the "safe harbor" provision of the TCA does not apply to the City's Design Manual restrictions; (2) that Crown Castle provides "telecommunications services" under the TCA; and (3) that this Court was not required to defer to authoritative FCC guidance in interpreting the TCA.

These arguments amount to nothing more than the mere "possibility of relief," and they are insufficient to support a stay. *Nken*, 556 U.S. at 434. The City has failed to present any compelling, "strong" argument that the Fifth Circuit <u>will</u> arrive at an interpretation of the TCA that differs from this Court's interpretation. Its arguments merely point out the "possibility" that the Fifth Circuit will disagree with this Court.

Absent compelling precedent (which the City has not provided) suggesting that the Fifth Circuit will materially disagree with this Court's judgment, there is no legal basis for finding that the City has any better chance at success on appeal than it had in front of this Court.

### a. This Court correctly held that the City's restrictions are not protected by safe harbor.

This Court has already considered and rejected the City's argument that the TCA's "safe harbor" provision extends to its Design Manual restrictions. Indeed, this Court also found that the City "waived the Safe Harbor Provision as an affirmative defense." *See Dkt. 147*, at 21. Absent new, compelling authority indicating that the Fifth Circuit would rule differently—either on waiver or on applicability—the City cannot show a "likelihood of success" based on an issue that this Court has already fully considered.

### b. This Court correctly held that Crown Castle provides "telecommunications services" as defined in the Telecommunications Act.

Again, this Court has already considered and rejected the City's argument that Crown Castle does not provide "telecommunications services." As Crown Castle amply showed on summary judgment, the City's argument completely ignores the plain language of the TCA's definition of "telecommunications provider."[1] Courts across the country have held that Crown Castle provides "telecommunications services" for the purposes of the TCA; and both the Texas PUC and the FCC accord in this finding.[2]

---

[1] *See Dkt 136*, Crown Castle's Response to City of Pasadena's Motion to Dismiss and for Final Summary Judgment, at 9-11.
[2] *See id.*

The City cannot show a "strong likelihood of success" based on decontextualized dicta in a single non-Fifth Circuit case from 1999 *denying review* of an FCC decision to *grant* an application for undersea cable landing rights to a "noncommon carrier."[3] The City's cherry-picked quotation is, ironically, a direct quotation from a 1997 FCC order that not only lacks precedential value as obsolete FCC guidance, but also tends to *support* the characterization of Crown Castle's services as "*common* carrier services" (as opposed to the "noncommon carrier" services at issue in *Virgin Islands*).[4] Furthermore, even if the City's quote has any precedential value (which it does not), the City has failed to explain how it has any applicability to Crown Castle's § 253 claim (because it is substantively irrelevant).

Accordingly, it is far more likely that the Fifth Circuit will dispose of these arguments in precisely the same manner and for the same reasons as this Court.

### c. This Court correctly followed the FCC's guidance in the 2018 Small Cell Order.

The City's conclusory assertion that this Court "was not required to follow or apply the Small Cell Order or other FCC declaratory rulings interpreting the TCA" shows, by its own terms, no more than a "possibility of relief." The City offered no precedent, made no showing nor presented any argument that the Fifth Circuit will

---

[3] *See Virgin Islands Tel. Corp. v. F.C.C.*, 198 F.3d 921, 929 (D.C. Cir. 1999).
[4] *In the Matter of Fed. State Joint Bd. on Universal Serv.*, 12 F.C.C. Rcd. 8776 (F.C.C. 1997), aff'd in part, rev'd in part and remanded sub nom. *Tex. Office of Pub. Util. Counsel v. F.C.C.*, 183 F.3d 393 (5th Cir. 1999) and order clarified on reconsideration, 19 F.C.C. Rcd. 23824 (F.C.C. 2004).

view the FCC's rulings as non-binding. In contrast, Crown Castle has presented (and already won summary judgment on) compelling arguments and authority that the Fifth Circuit *will* defer to the FCC's reasoned authority.

More importantly, the City fails to explain why the Fifth Circuit would rule differently than this Court **even if** the FCC's Small Cell Order is held not to be binding on the Fifth Circuit. Yet again, the City has merely pointed out the *possibility* that the Fifth Circuit will arrive at a different conclusion. The City's broad generalizations are insufficient to support the imposition of a stay because they do not meet the City's high burden of proof.

## II. THE CITY IS NOT "IRREPARABLY HARMED" BY LEAVING THIS COURT'S INJUNCTION IN PLACE.

To prevail on its motion, the City bears the additional burden of showing that it would be "irreparably harmed" by a failure to grant the stay. *Nken*, 556 U.S. at 433. Critically, however, a "stay is not a matter of right, **even if irreparable injury** might otherwise result." *Id.*

The City raises one legal argument that it will be irreparably harmed, and one speculative argument that is of no moment. First, the City claims that it is irreparably harmed by *any* injunction against the enforcement of its unlawful Design Manual. More specifically, the City claims that, as a local government, it will "necessarily suffer[] the irreparable harm of denying the public interest in the enforcement of its

laws" if its Design Manual provisions do not remain in effect pending appeal. Def. Mot. at 9. This generalized claim of irreparable harm, however, does not entitle the City to a stay. *See Nken* at 433.

Rather, the Court must weigh the City's generalized harm against the demonstrable injury to Crown Castle, and it must weigh these harms against the City's **failure to demonstrate any likelihood of success on appeal**. The City cites *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, but that case likewise confirms that a stay "is not a matter of right," even if "irreparable harm" might occur. *See* 734 F.3d 406, 419 (5th Cir. 2013) (predicating stay on "the State's likely success on the merits").

Second, the City suggests that "the Court's permanent injunction hampers the City and sets it up for additional lawsuits from other network providers and users of the City's pub[l]ic rights-of-way." Def. Mot. at 10. This is pure speculation without a shred of support. Moreover, this argument is irrelevant to the irreparable harm analysis: it is the City's *choice* to impose illegal Design Manual provisions.

The City of Pasadena cannot demonstrate any real, irreparable harm caused by the Court's injunction because absolutely no harm will arise from the installation of *replaceable poles* in the City's right-of-way. Importantly, the City's claim that it "cannot remove the node poles and network nodes" (Def. Mot. at 10) if the Court's judgment is reversed is **demonstrably false** on the facts and has no basis in law. The

City well understands that users of the right-of-way remove and replace wooden poles in the right-of-way *all the time*[5], and it has supplied no explanation or evidence for its claim that removing node poles will not be possible once they are installed. This is not to say that removing small cell nodes would not be a burdensome undertaking in terms of financial impact and impact to network capacity. But that is Crown Castle's own risk to assess and is not a proper consideration for purposes of assessing "irreparable harm." The City acknowledges this point elsewhere in its Motion: that if the City prevails on appeal, "Crown Castle "would then be obligated to [] remove the node poles and nodes." Def. Mot. at 11.

The only case the City cites to support this statement is *Veasey*, which concerned the enforceability of voter identification laws. *Veasey v. Perry*, 769 F.3d 890 (5th Cir. 2014). The Fifth Circuit acknowledged that *Veasey* was "not a run-of-the-mill case"; in the context of an imminent election, "the value of preserving the status quo" was "much higher than in most other contexts." *Id.* at 892. The City's objection to a few new poles in its right-of-way during the pendency of the appeal is not comparable to "the special importance of preserving orderly elections." *Id.* at 895.

---

[5] The irony of the City's claim here cannot be overstated: under the City's preempted permitting scheme, Crown Castle would have been forced to uproot and replace CenterPoint Energy poles at every single permitted location. The City cannot have it both ways by arguing that uprooting wooden poles in the right-of-way is simultaneously required and impossible.

In sum, the City has, at best, demonstrated that it has a general interest in enforcing its laws that will be disrupted by the Court's injunction. That generalized concern with enforcing an unlawful ordinance is not a sufficient basis to grant a stay.

### III. A STAY WOULD SUBSTANTIALLY INJURE CROWN CASTLE.

The harmful impact of a stay on Crown Castle cannot reasonably be disputed. A stay will further delay Crown Castle's ability to fulfill its contract with its customer, T-Mobile, which has waited for over four years for its small cell nodes to be installed in Pasadena.

The City's proposed delay also threatens to impose additional economic injury. Crown Castle's agreement with T-Mobile provides for recurring revenues for each node installed under the contract.[6] These economic harmsare significant and will increase with each passing month during the pendency of the appeal.

The City (without evidence) suggests that a stay would "avoid harm" to Crown Castle, citing the hypothetical economic risk that Crown Castle may have to remove new node installations if the City is successful on appeal. Def. Mot. at 11. Of course, any economic risk *to Crown Castle* is not a relevant basis for granting *the City* a stay. And in any event, this is a risk for Crown Castle to evaluate and is not

---

[6] *See* Dkt. 124, Crown Castle's Motion for Summary Judgment, at Exhibit 5, Crown/TMO Small Cell Order and Amendments, reflecting revenues lost as a result of the stay.

a potential "harm" that the Court should consider in determining whether the City is entitled to a stay.

## IV. THE PUBLIC INTEREST WEIGHS STRONGLY IN FAVOR OF DEPLOYMENT OF THE TELECOMMUNICATIONS INFRASTRUCTURE AT ISSUE.

Finally, the public interest opposes the issuance of a stay. The City insists that its "interest and harm merge with that of the public" with respect to enforcement of its unlawful Design Manual. Def. Mot. at 11.

Regardless of the merits of this assertion, the City cannot claim to wield the entirety of the public's interest under these circumstances. The City's generalized public interest stands in stark opposition to the public's *specific* interest in the rollout of critical wireless telecommunications infrastructure. The City's own expert witness in this case admitted that additional wireless capacity is needed in the City of Pasadena.[7] That deficiency in wireless capacity is an unacceptable harm to the public's interest in the expeditious advancement of the City's technological capabilities and competitive edge.

Moreover, the State of Texas has expressly declared that "network nodes are instrumental to increasing access to advanced technology and information for the citizens of this state." Tex. Loc. Gov't Code § 284.001(a)(1). The City's Design

---

[7] *See* Dkt. 143, Crown Castle's Reply in Support of Motion for Summary Judgement, at Exhibit 23, Deposition of Richard Comi, 18:6-8 ("[Crown Castle's experts] have shown enough for me to believe that there is some kind of additional capacity required.").

Manual provisions stand in direct opposition to "important public policy of having reliable wireless networks and services" *Id.* And as the FCC has found, "[r]emoving barriers" to deployment of these new technologies can "ensure that every community gets a fair shot at these deployments and the opportunities they enable."[8] Indeed, the FCC recognizes that the "public interest and balance of harms" favors the issuance of injunctions because the rapid deployment of small cell nodes is "critical" and should "not be stymied by unreasonable . . . local requirements."[9]

### REQUEST FOR SECURITY UNDER RULE 62

If this Court maintains—despite the City's **failure to meet the high burden**—that the City is entitled to a stay of this Court's permanent injunction pending appeal, Rule 62(d) requires that the Court suspend the injunction "on terms for bond or other terms that secure the opposing party's rights." FED. R. CIV. P. 62(d). As it stands now, the Court's order staying its permanent injunction grants the City extraordinary relief without securing Crown Castle's rights in any form.

As explained above, Crown Castle has suffered substantial harm from its inability to deploy nodes in Pasadena, and a stay of the injunction will further substantially harm Crown Castle. If the City loses on appeal, it will have imposed

---

[8] *See In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment*, 33 FCC Rcd 9088, 9089 ¶ 2 (2018) (noting that "[m]oving quickly to enable this transition is important").
[9] *See id.* at 9096 (explaining that "the need to site so many more 5G-capable nodes leaves providers' deployment plans and the underlying economics of those plans vulnerable to increased per site delays and costs").

13

additional significant costs on Crown Castle that ought to have ceased when the Court's injunction was granted.

The stay should be denied. But if the Court maintains the stay, Crown Castle respectfully requests that the Court amend its stay order such that it is "on terms for bond or other terms that secure [Crown Castle's] rights," Pursuant to Rule 62(d), the Court should order a bond sufficient to protect Crown Castle's lost revenues during the pendency of the appeal and, to avoid additional unnecessary future deployment delays, order that Crown may proceed with node permitting in Pasadena during the pendency of the appeal.

## CONCLUSION

For the foregoing reasons, the City of Pasadena's Motion to Stay Pending Appeal should be denied.

Respectfully submitted,

**BECK REDDEN LLP**

By:   /s/Jeff M. Golub
     Jeff M. Golub
     Texas State Bar No. 00793823
     Federal I.D. No. 21606
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
jgolub@beckredden.com

**ATTORNEYS FOR PLAINTIFF CROWN CASTLE FIBER LLC**

**OF COUNSEL**

Marty Gatens
Texas State Bar No. 24120844
Federal I.D. No. 3609810
mgatens@beckredden.com
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700

## **CERTIFICATE OF SERVICE**

I hereby certify a true and correct copy of the foregoing instrument has been served through the Court's ECF system on October 3, 2022 on all counsel of record.

*/s/Jeff M. Golub*
Jeff M. Golub
